UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | | |
|---|---|---|
| BRADLEY J. BARTON, § | | |
| TDCJ No. 1680744, § | | |
| § | | |
| Plaintiff, § | CIVIL ACTION NO. | |
| § | 1:14-CV-085-BL | |
| v. § | ECF | |
| § | | |
| R.M. HUERTA, § | | |
| et al., § | | |
| § | | |
| Defendants. § | Assigned to U.S. Magistrate Judge | |

## REPORT AND RECOMMENDATION

Plaintiff Bradley J. Barton is an inmate confined in the Robertson Unit of the Texas Department of Criminal Justice in Abilene, Texas. Before the court is Barton's request for a preliminary injunction against Defendant Renee M. Huerta, a correctional officer at Robertson, to prevent her from searching his cell, pending the disposition of this lawsuit. For the reasons below, the Magistrate Judge recommends that the District Judge grant Barton's request for injunctive relief.

### I. Relevant Background

Barton, who is proceeding *pro se* and *in forma pauperis*, filed his complaint pursuant to 42 U.S.C. § 1983 on May 23, 2014. (Doc. 1.) In his complaint, Barton alleges, *inter alia*, that Huerta confiscated or destroyed his personal legal materials, which are necessary to his preparation of a separate habeas action[1] and this lawsuit; thus, Barton asserts that Huerta is

---

[1] Barton currently has an appeal pending before the Fifth Circuit, *Barton v. Stephens*, No. 14-20147 (Notice of Appeal filed March 10, 2014), from a § 2254 habeas action filed in the Southern District of Texas, No. 4:13-CV-530 (dismissed without prejudice on February 21, 2014, for failure to exhaust state remedies).

violating his right of access to the courts. (*See id.*) His case was transferred to the Magistrate Judge on June 6, 2014. (Doc. 6.)

On June 18, 2014, Barton filed a motion for a temporary restraining order (TRO) against Huerta to prevent her from searching his cell and to "prevent Huerta's illegal conduct, which if allowed to continue, poses a very serious threat against Plaintiff vindicating an unconstitutional conviction that has resulted in his current confinement . . . ." (*See* Doc. 8.) On June 23, 2014, the court denied Barton's motion because he did not allege specific facts clearly showing that irreparable injury "will result . . . before the adverse party can be heard in opposition," and he did not certify to the court "in writing any efforts made to give notice and the reasons why it should not be required." (Doc. 9.) On July 3, 2014, Barton filed a motion for reconsideration of the court's denial of his TRO request, in which he also addressed the defects present in his previous motion. (Doc. 10.) After considering his motion, the court construed Barton's request as a request for a preliminary injunction[2] and, on July 9, 2014, ordered a hearing to address his request for injunctive relief. (*See* Doc. 13.)

On July 29, 2014, in conjunction with his *Spears* hearing, the court conducted a hearing to address his request for a preliminary injunction against Huerta. (*See* Doc. 18.) While the Defendants, TDCJ Office of General Counsel, and TDCJ Court Coordinator, *inter alios*, were given notice of the hearing, none of the Defendants or TDCJ representatives appeared at the preliminary-injunction hearing or the *Spears* hearing.

---

[2] A TRO may not exceed 14 days, under Rule 65(b)(2), so the court construes Barton's motion as a request for a preliminary injunction, rather than for a TRO. *See Dixon v. Vanderbilt*, 122 F. App'x 694, 695 (5th Cir. 2004) (per curiam) (unpublished) (explaining that because the relief sought, if granted, would exceed the time limit under Rule 65(b), the "motion was in effect a motion for preliminary injunction"); *see also United States v. Holy Land Found. For Relief & Dev.*, 445 F.3d 771, 789 (5th Cir. 2006) ("An ex parte order that purports to be of indefinite duration is a preliminary injunction rather than a temporary restraining order.").

## II. Analysis

Injunctive relief is an extraordinary remedy that requires the applicant to unequivocally show the need for its issuance. *See Valley v. Rapides Parish Sch. Bd.,* 118 F.3d 1047, 1050 (5th Cir.1997). The movant "has the burden of introducing sufficient evidence to justify the grant of a preliminary injunction." *PCI Transp., Inc. v. Fort Worth & W. R.R.,* 418 F.3d 535, 546 (5th Cir.2005). Additionally, "[t]he court may issue a preliminary injunction only on notice to the adverse party." Fed. R. Civ. P. 65(a)(1). The court's order setting the hearing for injunctive relief, and the hearing itself, served as notice to Defendants and TDCJ, if the court issues a preliminary injunction.

For the court to grant a preliminary injunction, the movant must demonstrate the following: (1) a substantial likelihood of success on the merits; (2) a substantial threat that failure to grant the injunction will result in irreparable injury; (3) the threatened injury outweighs any damage that the injunction will cause to the adverse party; and (4) the injunction will not have an adverse effect on the public interest. *Women's Med. Ctr. of Nw. Houston v. Bell,* 248 F.3d 411, 418–20 (5th Cir. 2001). "The denial of a preliminary injunction will be upheld where the movant has failed sufficiently to establish *any one* of the four criteria." *Black Fire Fighters Ass'n v. City of Dallas, Tex.,* 905 F.2d 63, 65 (5th Cir. 1990) (emphasis in original).

### A. Substantial Likelihood of Success on the Merits

Inmates have a constitutional right of access to the courts. *Bounds v. Smith,* 430 U.S. 817, 821 (1977); *accord Tubwell v. Griffith,* 742 F.2d 250, 252 (5th Cir.1984). Confiscation of an inmate's legal materials, which are essential to the inmate's preparation in a habeas or civil rights case, violates the inmate's right of access to the courts. *See Bounds,* 430 U.S at 821-832; *Lewis v. Casey,* 518 U.S. 343, 350-51 (1996). Because he has alleged a violation of his

constitutional rights, Barton is entitled to seek injunctive relief to safeguard those rights. *See Bell v. Hood,* 327 U.S. 678, 684 (1946).

In his complaint Barton specifically identified the legal materials he alleges Huerta confiscated—the materials include various legal guides, hundreds of pages of case law, and legal material sent to him by his attorney. (*See* Doc. 1 at 3-5.) Attached to Barton's complaint are various exhibits, including responses by TDCJ officers to his grievance forms. (*See id.* at 10-19.) In response to Barton's grievances, TDCJ officers admitted that legal materials were confiscated from Barton: "None of the legal materials confiscated had your name or number on there [*sic*]. Since ownership could not be confirmed, they were considered contraband and therefore subject to seizure." (Doc. 1 at 15.) An officer also responded:

> As stated before, your name and # was not on the material; therefore, ownership is in question, regardless of whether it came from your attorney or not. Furthermore, the materials were searched for physical contraband, and substantial portions of legal material belonging to the McConnell Unit Law Library were found amongst the possessions—thus it was ALL subject to be confiscated in accordance with policy.

(Doc. 1 at 16.)

Further, at his preliminary-injunction hearing, Barton alleged that Patrick Barnes, an inmate at Robertson, witnessed Huerta confiscating or destroying his essential legal materials. Barton also proffered to the court that Barnes would testify that Huerta has taken other inmates' legal materials.

Based on the exhibits attached to Barton's complaint and Barton's uncontroverted testimony at the hearing, Barton has made an initial showing of a substantial likelihood of success on the merits.

**2. Substantial Threat of Irreparable Injury**

In his complaint and subsequent motions, Barton argues that if Huerta is allowed to search his cell, there is a substantial threat that Huerta will continue to take his legal materials, and thereby cause him irreparable injury by disrupting his litigation of his pending lawsuits. In an affidavit attached to his motion for reconsideration, Barton states:

> [Huerta] has informed other officers, who have informed other inmates, including me, that she has a "hit" on me—meaning she will seize an opportunity to do again and again, what I show she's done in my suit. This will be devastating to my Petition(s) for Writ of Habeas Corpus that I have pending in State and Federal court.

(Doc. 10 at 3.) At his preliminary-injunction hearing, Barton specified that the "hit" on him was in reference to confiscating his essential legal materials. As well, Barton proffered to the court that various inmates would testify that Huerta has confiscated essential legal materials from numerous inmates, she has done so in retaliation for filing grievances, and she plans to continue doing so.

Barton also argued that because Huerta had never been reprimanded or told not to confiscate inmates' legal materials, other officers had tacitly approved of her actions; thus she would likely take such actions in the future.

Accordingly, Barton has initially shown a threat of irreparable injury in the litigation of his habeas and § 1983 lawsuits.

**3. Threatened Injury to Barton vs. Damage to the Adverse Party**

Barton argues that Huerta will cause him harm by preventing him from effectively litigating his habeas corpus and civil-rights claims, thereby violating his constitutional right of access to the courts. Barton reasons that any damage to Huerta or TDCJ would be minimal because they could simply replace Huerta with another guard if Barton's cell had to be searched; further, Barton asserts that the preservation of his constitutional right of access to the courts—by

having another officer, instead of Huerta, search his cell—outweighs any damage that the injunction would cause to Huerta or TDCJ. (*See* Doc. 8.)

**4. Adverse Effect on Public Interest**

In his motion for a TRO, Barton stated:

> The grant of a TRO will in no way disserve the public interest [ ] as nothing pertaining to this lawsuit involves the public. Further, by <u>not</u> granting a TRO, <u>that</u> may very well disserve the public interest as it will directly effect [*sic*] Petitioner's ability to secure the habeas relief that he, once the facts and law are proven in his case, is entitled to. *See Rose v. Lundy*, 455 U.S. 509, 528 (1982) (It is well settled that "[t]he interest of the prisoner and society in preserving the writ of habeas corpus [is to have] a swift and imperative remedy in all cases of illegal restraint or confinement." . . . ). Thus, Plaintiff has clearly met the criteria for the grant of a TRO.

(Doc. 8 at 3.)

As stated, Barton has compellingly reasoned why a preliminary injunction against Huerta will not have an adverse effect on the public interest.

## V. CONCLUSION

Based on the initial showing by Barton, and without any contrary evidence provided by the Defendants, the Magistrate Judge **RECOMMENDS** that the District Judge **GRANT** Barton's requests for a preliminary injunction, enjoining Huerta from searching Barton's cell, while his lawsuits are pending.

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report and Recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's Report and Recommendation where the disputed

determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

**SO ORDERED** this 1st day of August, 2014.

E. SCOTT FROST
**UNITED STATES MAGISTRATE JUDGE**